UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

AUDREY J. McQUAY,                    )
                                     )
        Plaintiff,                   )
                                     )        No. 1:04-CV-97
v.                                   )
                                     )        JUDGE CURTIS L. COLLIER
                                     )        MAGISTRATE JUDGE LEE
JO ANNE B. BARNHART,                 )
Commissioner of Social Security,     )
                                     )
        Defendant.                   )


<u>REPORT AND RECOMMENDATION</u>


This action was instituted by the Plaintiff pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying the Plaintiff a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, and 1382. This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure for a report and recommendation regarding the disposition of Plaintiff's motion for reversal or remand (Court File No. 13) and Defendant's motion for summary judgment (Court File No. 19).

For the reasons stated herein, I RECOMMEND that the decision of the Commissioner be REVERSED and REMANDED under Sentence Four of 42 U.S.C. § 405(g) for further proceedings consistent with this Report and Recommendation.

<u>Administrative Proceedings</u>

Plaintiff applied for DIB and SSI on September 25, 2001 alleging disability since August 15, 1997, which was later amended to an onset date of February 1, 2000 (Tr. 73-75, 307-09, 324).[1] Plaintiff's applications were denied initially, upon reconsideration, and after a hearing and decision issued by the ALJ (Tr. 13-19, 24-31, 54-58, 61-62, 305-06, 310-18, 319-45). The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on December 30, 2003 (Tr. 5-7). Plaintiff timely sought judicial review of the ALJ's decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) (Complaint, Court File No. 4).

<u>Standard of Review</u>

The Court must determine whether the ALJ failed to apply the correct legal standard and whether the ALJ's findings of fact were supported by substantial evidence. 42 U.S.C. § 405(g); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "This Court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997)). If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the Court might have decided facts differently, or if substantial evidence also would have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not re-weigh the evidence and substitute its own judgment for that of the Commissioner merely because

---

[1] Plaintiff previously filed an initial application for DIB on October 10, 1997 alleging disability commencing August 15, 1997. A final and binding decision denying that earlier claim was entered (Tr. 13).

substantial evidence exists in the record to support a different conclusion.  The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts.  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986).  The Court may consider any evidence in the record, regardless of whether it has been cited by the ALJ.  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  The Sixth Circuit has held that substantial evidence is "such evidence as a reasonable mind might accept as adequate to support a conclusion."  *Garner*, 745 F.2d at 388 (citation omitted).

<u>How Disability Benefits Are Determined</u>

Disability is defined as the inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 423(d)(1)(A).  The Commissioner's regulations provide that disability claims are evaluated by way of a five-step sequential analysis.  20 C.F.R. § 404.1520.  The five-step analysis is sequential because if, at any step, the claimant is found to be not disabled or to be disabled, then the claim is reviewed no further.  20 C.F.R. § 404.1520(a).  The following are the five steps in the analysis:

Step 1:  Is claimant engaged in substantial gainful activity?  If so, claimant is not disabled.  20 C.F.R. § 404.1520(b).

Step 2:  Does claimant have a "severe" impairment or combination of impairments that significantly limits claimant's ability to do basic work activities, and will foreseeably result in death or last at least twelve months?  If not, claimant is not disabled.  20 C.F.R. §§ 404.1509,

404.1520(c), 404.1521.

Step 3: Does the claimant's impairment meet or equal the criteria of an impairment described in the Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. P, Appendix 1? If so, the claimant is disabled, and the analysis may end without inquiry into the vocational factors. 20 C.F.R. § 404.1520(d). If inquiry is made into vocational factors, then after step three but before step four, the Commissioner evaluates a claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e)-(f); 404.1545.

Step 4: Does claimant's RFC permit claimant to perform claimant's past relevant work? If so, the claimant is not disabled. 20 C.F.R. § 404.1520(f).

Step 5: Does the claimant retain the RFC to perform other work in the economy? If so, the claimant is not disabled. 20 C.F.R. § 404.1520(g).

The burden of proof is upon the claimant at steps one through four to show disability. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391-92 (6th Cir. 1999). Once the claimant has demonstrated the extent of claimant's RFC at step four, the burden shifts to the Commissioner to show that there is work in the national economy that may accommodate claimant's RFC. *Id.*

<u>ALJ's Findings</u>

The ALJ made the following findings in support of Defendant's decision, which are conclusive if they are supported by substantial evidence in the record:

1. The claimant meets the disability insured status requirements of the Act through June 30, 2002.

2. The claimant has not engaged in substantial gainful activity since February 1, 2000, the amended onset date.

3. The claimant has "severe" impairments, as described in the decision, but does not have an impairment or combination of impairments listed in, or medically equal to

4

one listed in Appendix 1, Subpart P, Regulations No. 4.

4.     The claimant's testimony is not supported by the medical evidence of record.

5.     The claimant has the residual functional capacity to perform work that allows for avoidance of balancing, climbing of scaffolds, ropes or ladders and unprotected heights and moving machinery. There are no exertional limitations.

6.     The claimant is unable to perform any past relevant work and has no transferable work skills.

7.     The claimant is 50 years old, which is defined as closely approaching advanced age.

8.     The claimant reports having completed a sixth grade education.

9.     If the claimant's nonexertional limitations did not compromise the ability to perform work at all exertional levels, section 204.00 of Appendix 2 indicates that a finding of not disabled would be appropriate.

10.     Considering the claimant's nonexertional limitations and the vocational factors of age, education, and work experience, a significant number of jobs remain in the national economy, which the claimant could perform. Examples and numbers of such jobs were identified by a vocational expert at the hearing.

11.     The claimant has not been under a "disability," as defined in the Social Security Act, at any time through the date of this decision.

(Tr. 18-19).

<u>Issues Presented by Plaintiff</u>

Plaintiff alleges the following errors:

1.     The ALJ erred in determining that Plaintiff's condition does not satisfy the requirements of listing 11.03.

2.     The ALJ erred in failing to adequately evaluate the credibility of Plaintiff and her witnesses.

3.     At a minimum, Plaintiff's claim should be remanded under sentence six of 42 U.S.C. § 405(g) for consideration of new and material evidence.

5

<u>Review of Evidence</u>

Plaintiff alleges disability as a result of seizures, epilepsy, depression, manic depression, and anxiety attacks, with accompanying headaches and nausea (Tr. 14-15, 82). Plaintiff was last insured for DIB on June 30, 2002 (Tr. 18). A review or summary of the evidence is contained in the ALJ's decision (Tr. 13-19). Where necessary to the analysis of the issues raised, such evidence is discussed in detail below.

*Plaintiff's Age, Education, and Past Work Experience*

Plaintiff was 51 years old on the date of the decision by the ALJ (Tr. 73). Plaintiff has a sixth grade education and has past relevant work experience as an industrial sewing machine operator (Tr. 13, 88, 91-92).

*Medical Evidence Pertaining to Disability*

Plaintiff reported seizure activity as early as September 1998 when her treating physician, Dr. Kozawa, referred her to Dr. Kabbani, a neurologist, for treatment with respect to "[q]uestionable seizures" (Tr. 211). Dr. Kabbani saw Plaintiff beginning in October 1998, and his December 1998 notes opine that Plaintiff's seizures were "pseudo seizures" (Tr. 172-74).

Dr. Kabbani's contemporaneous treatment notes generally indicate that Plaintiff was "doing fine and stable" during his treatment of Plaintiff (*see e.g.*, Tr. 171, 174, 284). Dr. Kabbani prescribed and adjusted Plaintiff's medications for seizure activity at various times (*see e.g.*, Tr. 169, 171, 174, 284). In February, 2000, Dr. Kabbani noted that Plaintiff reported having frequent seizures, about three per day (Tr. 171). In April 2000, Dr. Kabbani's notes state Plaintiff was feeling better and had no medication side effects (Tr. 171). Dr. Kabbani continued to treat Plaintiff, increasing and adjusting her mediation at various times (*see e.g.,* Tr. 171). Plaintiff also continued

to see Dr. Kozawa in April, May, June, July, August, October, and November 2000 and January, 2001 for various ailments, including seizure activity (Tr. 181-89). In March 2001, Plaintiff again saw Dr. Kabbani and reported headaches in addition to seizure activity, and Dr. Kabbani again adjusted her medications (Tr. 171). Plaintiff saw Dr. Kabbani on October 1, 2001, and his notes state that Plaintiff was unable to work (Tr. 169-70).

In a January 2002 psychological evaluation, Plaintiff said she sometimes made her bed and got dressed and made instant coffee in the morning (Tr. 217). She usually showered in the evening before going to bed (Tr. 217). Plaintiff made herself lunch, prepared microwave meals, and washed and dried the dishes (Tr. 217). She read and listened to the radio (Tr. 217, 331, 335). Plaintiff had a dog that she fed and brushed (Tr. 217). Sometimes, Plaintiff went out to eat with her daughter on weekends (Tr. 217). Plaintiff also reported having friends with whom she visited regularly (Tr. 217).

Dr. Bell, a state agency physician, reviewed the record evidence in March 2002, and he concluded Plaintiff could perform all exertional levels of work but needed to avoid all exposure to hazards such as machinery and heights (Tr. 241-48).

Dr. Millis, another state agency physician, also reviewed the record evidence in July 2002 and reached essentially the same conclusion as Dr. Bell that Plaintiff had no restrictions except avoiding hazards (Tr. 260-67).

Plaintiff returned to Dr. Kozawa in September 2002 for another medical problem, and reported a seizure on the day of her visit (Tr. 269). On January 1, 2003 Dr. Kabbani sought and received approval from Plaintiff's insurance carrier for a vagal nerve stimulator, which was approved by Plaintiff's insurance carrier on January 22, 2003 (*see* Tr. 134). Plaintiff returned to Dr.

Kabbani in February 2003 who again reported in his contemporaneous notes that Plaintiff was fine and stable despite an allergic reaction to some mediation (Tr. 284). In April 2003, another treating physician, Dr. Dhar, found that the Plaintiff would not have excessive absences due to seizure activity (Tr. 17, 286-87). Dr. Dhar's Medical Source Statement of April 2003 checked that Plaintiff's seizures were not more frequent than once weekly and that Plaintiff had only reported one seizure to Dr. Dhar in the last six months, but also noted that her seizures were treated and tested by Dr. Kabbani (*id.*).

A printout of Plaintiff's medication refills from April 2002 through the time of her hearing in May 2003 is part of the record (Tr. 146-49). Plaintiff's hearing before the ALJ was held May 22, 2003 (Tr. 13). The ALJ issued his decision on May 28, 2003, which was received by counsel for Plaintiff on June 2, 2003 (Tr. 19; Memorandum in Support of Reversal of the Commissioner's Decision, Court File No. 14 ("Pl.'s Brief"), Ex. A at 1).

*Medical Evidence Submitted Subsequent to the Hearing*[2]

Plaintiff asserts she requested the ALJ, and later the Appeals Council, reopen the ALJ's unfavorable decision pursuant to 20 C.F.R. § 404.987 based upon a claim of recently received medical evidence (Pl.'s Brief at 2). That evidence consists of a June 2003 "Medical Source Statement" from Dr. Kabbani (Pl.'s Brief, Ex. A at 3-4), treatment notes from Dr. Scariano dated June through October 2003 (Pl.'s Brief, Ex. C at 1-9), and a June 2003 treatment note from Dr. Kabbani (Pl.'s Brief, Ex. D at 1). Plaintiff's counsel has represented to the Court that she sent Dr. Kabbani's June 2003 Medical Source Statement to the ALJ after his unfavorable decision was issued

---

[2] In preparing this report and recommendation, I do not rely upon the evidence Plaintiff submitted subsequent to her hearing before the ALJ.

and to the Appeals Council when she requested its review (Pl.'s Brief at 21-22). She also states she sent Dr. Kabbani's statement and the other evidence listed above to the Appeals Council after it denied her request for review of the ALJ's decision (Pl.'s Brief at 22). This evidence does not appear in the record, but instead was submitted as an attachment to Plaintiff's Brief.

On June 2, 2003, Dr. Kabbani completed a Medical Source Statement regarding Plaintiff's work-related limitations, stating she experienced minor motor seizures more than once weekly in spite of prescribed medications (Pl.'s Brief, Ex. A at 3-4). He stated that the seizures were associated with loss of consciousness or alterations of awareness and said Plaintiff would need to lay down several times in an average eight hour work day (*id.*). Dr. Kabbani further opined that Plaintiff would be unable to maintain concentration, attention, and/or persistence of pace due to the seizure disorder and/or medication, and could be expected to be absent from work in excess of twice per month due to the seizure disorder (*id.*). The Medical Source Statement asked about his repeated treatment notes that Plaintiff was "fine and stable," and Dr. Kabbani explained his notations as follows: "has no new symptomatology or finding on exam!" (*id.*). He also stated that some of plaintiff's seizures were probably pseudoseizures (*id.*).

On June 8, 2003, Plaintiff had a EEG, which was interpreted as normal (Pl.'s Brief, Ex. C). On June 11, 2003, Plaintiff reported back to Dr. Kabbani complaining of headaches and depression, and he again adjusted her medications after noting there was no change on physical exam (Pl.'s Brief, Ex. D). Plaintiff sought treatment from another neurologist, Dr. Scariano, in July 2003, and he ordered an MRI of her brain (Pl.'s Brief, Ex. C). The MRI was performed July 23, 2003 with normal results (*id.*). Plaintiff returned to Dr. Scariano in August 2003, and he altered her medication and recommended a lumber puncture which was performed August 28, 2003 with normal results

9

(*id.*). Plaintiff returned to Dr. Scariano in September and her medications were adjusted (Pl.'s Brief, Ex. C). On October 10, 2003 Plaintiff reported to Dr. Scariano that during a seizure she fell and broke her leg (*id.*).

*Vocational Evidence Pertaining to Disability*

At the administrative hearing, the ALJ posed a hypothetical question to a vocational expert describing someone of Plaintiff's age, education, and past work experience, who was able to perform work limited to simple one- and two-step procedures, that did not require balance, driving, work around moving machinery or unprotected heights, or climbing ladders, ropes, or scaffolds (Tr. 338-39). The vocational expert testified such an individual could perform jobs such as inspector or packer, which numbered approximately 1000 inspection and 1000 packer jobs in the regional economy and in greater multiples in the national economy (Tr. 339). He further testified that if Plaintiff's testimony were credible and otherwise supported by the medical records, then there would be no work that Plaintiff could perform (Tr. 339).

*Plaintiff's Testimony*

Plaintiff, who was represented by counsel at the hearing before the ALJ, testified that she had daily seizures, and she related the effect that the seizures had on her life (Tr. 325-37). She believes her seizures are getting worse (Tr. 331-32). While Dr. Kabbani talked to her about a vagal nerve stimulator around May 2002, she testified that she had only recently received approval for implantation of the device (Tr. 329). Plaintiff said she was scared about implantation but that she was interested in getting more information about the device and would probably get the implantation if convinced it would help her (Tr. 330).

Regarding her daily life activities, Plaintiff testified she owned an automobile and still had

her license but that she had not driven since 1997 (Tr. 326, 332). She lives alone, but a neighbor's child checks on her daily and helps her with some of the housework and cooking (Tr. 330, 334-35). She said she was able to vacuum and clean to some degree (Tr. 333).

*Daniel Abercrombie Testimony/Statements from Witnesses*

Statements from various persons supporting Plaintiff were submitted stating that they had personally witnessed her having seizures, and related information (Tr. 135-45). Neighbor Daniel Abercrombie also testified at the hearing that he had seen Plaintiff have several seizures during a day, sometimes as many as ten, and that he spent time at Plaintiff's house nearly every day (Tr. 341-43).

<u>Analysis</u>

The ALJ applied the five-step sequential evaluation and found Plaintiff was not disabled during the relevant time period. He concluded Plaintiff had "severe impairments" within the meaning of the regulations, but that she did not have any impairments, singly or in combination, that met or equaled in severity the criteria of any listed impairment during the relevant time period. He also concluded Plaintiff was not disabled because she retained the RFC to perform work in the economy. For Plaintiff to be entitled to disability insurance benefits, she is required to show she became disabled on or before June 30, 2002, the last date she was insured for disability insurance. 42 U.S.C. §§ 423(a), 423(c).

As a general rule, if the claimant has an impairment that matches or is substantially equivalent to a listed impairment, the claimant is disabled *per se. Gambill v. Bowen,* 823 F.2d 1009, 1011 (6th Cir 1987). It is Plaintiff's burden to prove her impairments meet or medically equal a listed impairment. *See Bowen v. Yuckert*, 482 U.S. 137, 146, 107 S. Ct. 2287, 2293-94, 96 L. Ed.

2d 119 (1987). To do so, she must demonstrate that her impairment meets the applicable impairment listing or present medical evidence that shows how her impairment is medically equivalent to a listed impairment. *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001); *Land v. Sec'y of Health & Human Servs.*, 814 F.2d 241, 245 (6th Cir. 1986). In order to meet the requirements of a listed impairment, a claimant must meet all the elements of the listed impairment. *Hale v. Sec'y of Health & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir. 1987) (citing *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984) (lack of evidence indicating the existence of all the requirements of a listing provides substantial evidence to support finding that claimant did not meet the listing)). Substantial evidence exists to support a finding that the claimant does *not* meet the listing if there is a lack of evidence indicating the existence of all of the requirements of a listed impairment. *Hale*, 816 F.2d at 1083. It is not sufficient to come close to meeting the requirements of a listing. *See Dorton v. Heckler*, 789 F.2d 363, 367 (6th Cir. 1989) (decision to deny benefits affirmed where medical evidence almost establishes a disability under listing).

Plaintiff argues she meets or equals listing 11.03, which provides as follows:

Epilepsy—nonconvulsive epilepsy (petit mal, psychomotor, or focal), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment. With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interferences with activity during the day.

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 11.03. Further, regulation § 11.00A states in relevant part:

In epilepsy, regardless of etiology, degree of impairment will be determined according to type, frequency, duration, and sequelae of seizures. At least one detailed description of a typical seizure is required. . . . The reporting physician should indicate the extent to which description of seizures reflects his own observations and the source of ancillary information. Testimony of persons other

than the claimant is essential for description of type and frequency of seizures if professional observation is not available.

Under 11.02 and 11.03, the criteria can be applied only if the impairment persists despite the fact that the individual is following prescribed antiepileptic treatment. Adherence to prescribed antiepileptic treatment can ordinarily be determined from objective clinical findings in the report of the physician currently providing treatment for epilepsy. Determination of blood levels of phenytoin sodium or other antiepileptic drugs may serve to indicate whether the prescribed medication is being taken. When seizures are occurring at the frequency stated in 11.02 or 11.03, evaluation of the severity of the impairment must include consideration of the serum drug levels. . . . Blood drug levels should be evaluated in conjunction with all other evidence to determine the extent of compliance. . . .

*Id.* at § 11.00A. According to Social Security Ruling 87-6, the record of anticonvulsant blood levels is required before a claim can be allowed. SSR 87-6, at 2. "If satisfactory information on blood drug levels is not available in the treating physician's records, it must be obtained through a purchased examination." *Id.*

At issue is whether there is substantial evidence to support the ALJ's determination at step three of the analysis that Plaintiff's seizure activity did not meet the criteria of any listed impairment, which would include listing 11.03. The ALJ's written decision in this case does not specify why he concluded Plaintiff's severe impairments do not meet or equal the severity of 11.03 or any other listed impairment. Instead the decision contains the following conclusory sentences:

Review of the evidence reveals that the claimant has "severe" impairments under the criteria of Social Security Ruling 96-3p, including seizure activity and depression. However, the claimant has no impairments, singly or in combination, that meet or equal in severity the criteria of any listing at Appendix 1.

As no listing is met or equaled, I have evaluated the claimant's residual functional capacity.

(Tr. 14). These sentences comprise the ALJ's explanation for his conclusion that Plaintiff was not disabled at step three of the sequential analysis, and the remainder of his opinion concerns Plaintiff's

13

RFC for performing work that exists in significant numbers in the national economy.

Federal courts generally agree an ALJ should provide a sufficient explanation for his step three conclusion when making a disability determination. *See, e.g., Jones v. Comm'r of Soc. Sec.*, 364 F.3d 501, 505 (3d Cir. 2004); *Scott v. Comm'r of Soc. Sec.*, 297 F.3d 589, 595 (7th Cir. 2002); *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The purpose of the ALJ's explanation is to facilitate meaningful judicial review of the administrative decision. *See, e.g., Jones*, 364 F.3d at 505 ("[T]he function . . . is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review"); *Scott*, 297 F.3d at 595 (stating ALJ required to explain analysis, from evidence to conclusion, so reviewing court may assess the validity of agency's ultimate findings and afford claimant a meaningful judicial review); *Clifton*, 79 F.3d at 1009 ("In the absence of ALJ findings supported by specific weighing of the evidence, we cannot assess whether relevant evidence adequately supports the ALJ's conclusion that appellant's impairments did not meet or equal any Listed Impairment, and whether he applied the correct legal standards to arrive at that conclusion.").

The crux of the issue in this case is whether meaningful judicial review of the Commissioner's decision at step three of the five step sequential analysis can occur. Federal courts differ on whether meaningful review can take place where the ALJ has omitted specific reference to or discussion of impairment listings that are relevant in light of a claimant's evidence. Some courts remand an ALJ's conclusory step three determination because the ALJ is required to discuss the evidence and sufficiently explain why he found the claimant was not disabled under the relevant impairment listing or combination of listings at step three. *See Scott*, 297 F.3d at 595-96; *Clifton*, 79 F.3d at 1009-10; *Marcia v. Sec'y of Health & Human Servs.*, 900 F.2d 172, 176 (9th Cir. 1990)

(remanding because ALJ's bare statement that claimant did not equal a listing was insufficient); *Jamison v. Sec'y of Health & Human Servs.*, 814 F.2d 585, 588-89 (11th Cir. 1987) ("[W]here we can cannot [determine what statutory and regulatory requirements the ALJ did in fact apply] we must vacate and require a remand to the Secretary for clarification."); *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986) (holding deficient explanation of step three conclusion prevented reviewing court from being able to tell whether substantial evidence supported the determination); *Miller v. Comm'r of Soc. Sec.*, 181 F. Supp. 2d 816, 819-20 (S.D. Ohio 2001) (holding remand was required because lack of step three discussion left it unclear why ALJ concluded claimant did not meet listing) (citing *Clifton*, 79 F.3d at 1010); *Williams v. Sec'y of Health & Human Servs.*, 664 F. Supp. 1200, 1207 (N.D. Ill. 1987) ("No court should be forced to engage in speculation as to the reasons for an ALJ's decision.  If the decision on its face does not adequately explain how a conclusion was reached, that alone is grounds for a remand . . . even if [the Commissioner] can offer proper post hoc explanations for such unexplained conclusions.") (citations omitted).

Other federal courts hold that remand is not required where the ALJ fails to explicitly mention or discuss a specific listing and give detailed reasons for the step three conclusion, so long as the ALJ's decision, read as a whole, shows there is substantial evidence to support the step three conclusion.  *Rice v. Comm'r of Soc. Sec.*, 384 F.3d 363, 369-70 (7th Cir. 2004) (finding ALJ's step three determination supported by substantial evidence based on detailed treatment of record evidence in support of conclusions at steps three and five, despite lack of explicit reference to appropriate impairment listing in decision); *Jones*, 364 F.3d at 503-05 ("[T]he ALJ's decision, read as a whole, illustrates that the ALJ considered the appropriate factors in reaching the conclusion that Jones did not meet the requirements for any listing . . . ."); *Brindisi ex rel. Brindisi v. Comm'r of*

15

*Soc. Sec.*, 315 F.3d 783, 786-87 (7th Cir. 2003) ("We recognize that even a 'sketchy opinion' is sufficient if it assures us that an ALJ considered the important evidence and enables us to trace its reasoning. But in this case, the conclusory and conflated analysis prevents this court from finding that substantial evidence supports the ALJ's conclusions.") (citation omitted); *Senne v. Apfel*, 198 F.3d 1065, 1067 (8th Cir. 1999) (rejecting argument that conclusory form of explanation, alone, justifies remand of ALJ's decision, but remanding because unable to ascertain on the particular record whether ALJ's step three conclusion was supported by substantial evidence). *But see Allen v. Comm'r of Soc. Sec.*, 357 F.3d 1140, 1145 (10th Cir. 2004) (warning that "harmless error" analysis of ALJ decision may risk violating the general rule against *post hoc* justification of administrative action, but recognizing it "may be appropriate to supply a missing dispositive finding under the rubric of harmless error in the right exceptional circumstance, i.e., where, based on material the ALJ did at least consider (just not properly), [a reviewing court] could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way."). These courts indicate the ALJ's decision should be viewed as a whole and refuse to reverse and remand solely for an error in opinion writing. *See Rice*, 384 F.3d at 370 n.5 ("Because it is proper to read the ALJ's decision as a whole, and because it would be a needless formality to have the ALJ repeat substantially similar factual analyses at both steps three and five, we consider the ALJ's treatment of the record evidence in support of both his conclusions at steps three and five.") (citation omitted); *Senne*, 198 F.3d at 1067 ("[A] deficiency in opinion-writing is not a sufficient reason for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case."); *see also Kish v. Comm'r of Soc. Sec.*, No. CIV. A. 00-CV-1765, 2001 WL 1287459, at *12 (E.D. Pa. Oct. 22, 2001) ("[ALJ's] failure to mention by

16

name Listing 1.05(C) was semantic only, as he constructively mentioned it in substance.").

No cases have been located or cited by the parties where the United States Court of Appeals for the Sixth Circuit has addressed the specific issue raised by Plaintiff. In general, however, the failure to include specific and accurate references to evidence that supports an ALJ's decision could result in a remand of the administrative decision. *See Morehead Marine Servs. v. Washnock*, 135 F.3d 366, 375 (6th Cir. 1998) (remanding for further review where ALJ based decision on statement that did not exist in record and was contrary to statement in record made by same declarant); *Cranfield v. Comm'r of Soc. Sec.*, No. 02-5685, 2003 WL 22506409, at *5 (6th Cir. Nov. 3, 2003) (addressing claimant's use of *Morehead* as authority, yet stating ALJ had no obligation to analyze particular health condition where no record evidence suggested it was regarded by claimant or her physicians as an impairment). Further, the Sixth Circuit has remanded a social security case where the "ALJ failed to develop the factual record fully and fairly" because "[t]he lack of clear medical evidence, in light of the impairments suggested by the physicians, prevented fair review of [the claimant's] claim." *Johnson v. Sec'y of Health & Human Servs.*, 794 F.2d 1106, 1111 (6th Cir. 1986) (observing claimant may have satisfied the specific listing referred to in ALJ's analysis and noting ALJ's statements were contradictory on the issue).

Two decades ago, a panel of the Sixth Circuit suggested in an unpublished opinion that an ALJ's failure to make an explicit finding concerning a claimant's testimony does not always require a reversal and remand of the decision. *Marmon v. Sec'y of Health & Human Servs.*, No. 84-6111, 1985 WL 13740 (6th Cir. Sept. 19, 1985). Recognizing the ALJ implicitly rejected the claimant's testimony alleging severe pain, the Sixth Circuit stated a reviewing court "may accept the ALJ's implicit findings if substantial evidence supports those findings." *Id.* at *4. For this proposition,

17

the Sixth Circuit cited *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982). In *Berry*, the Second Circuit reviewed an ALJ's decision that lacked a specific rationale in support of the "not disabled" conclusion he reached at step three of the sequential analysis. *Id.* at 468. Despite the ALJ's superficial step three explanation, the Second Circuit "was able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence." *Id.* at 469. The *Berry* court cautioned that cases may arise in which the ALJ's rationale would be indiscernible and thus require a remand for further findings or a clearer explanation of the decision. *Id.* Nevertheless, *Berry* demonstrates a reviewing Court may be able to adequately review a poorly explained step three conclusion by looking to other portions of the ALJ's decision.

After considering the caselaw discussed above, I am unwilling to recommend reversal and remand of the ALJ's decision solely because the ALJ's decision omits any reference to listing 11.03 and omits an explicit explanation for his conclusion at step three of the sequential analysis. Rather, I conclude the better approach is to consider the decision as a whole to evaluate whether meaningful judicial review can take place with respect to whether substantial evidence supports the step three determination.[3] Using this approach, I find remand is appropriate for the reasons stated below.

A review of the ALJ's opinion reveals the ALJ assessed and analyzed Plaintiff's evidence to evaluate and establish Plaintiff's functional limitations but not to determine whether Plaintiff's impairments met or equaled listing 11.03. According to the ALJ, Plaintiff testified she could not

---

[3] Despite my conclusion, judicial review would surely be facilitated when the ALJ's decision specifically identifies the impairment listings that are relevant based upon a claimant's evidence, sets forth the relevant criteria of those listings, and states the ALJ's evaluation of the evidence in light of those criteria. *See generally Jones*, 297 F.3d at 595 (admonishing ALJs to follow similar framework for making step three determinations).

18

work due to ongoing seizure activity occurring at least twice a day and requiring bed rest two to three times per day. A neighbor testified he saw Plaintiff experience multiple seizures daily, sometimes up to ten per day, and other friends submitted letters stating they observed Plaintiff experience frequent seizure activity over time. The ALJ then noted a neurologist's 1998 description of Plaintiff's seizures as "pseudo" seizures and a consulting psychologist's report on Plaintiff's daily activities. The ALJ discounted Plaintiff's and her friends' reports of frequent seizure activity, finding that Plaintiff's daily activities and perceived inconsistencies in their allegations of limitation did not match the description of someone severely limited due to having multiple seizures per day (Tr. 16). The ALJ's discussion of Plaintiff's reported seizure activity focuses on the level of limitation it reasonably causes as part of his determination of Plaintiff's RFC.

The ALJ's discussion does not, however, reflect consideration of listing 11.03 or evaluation of the evidence in the light of listing 11.03 criteria during the relevant time period. The ALJ's resulting failure to give reasons supporting his step three determination has potentially affected the outcome of Plaintiff's claim for benefits and cannot be classified as "harmless error." Even reading the ALJ's decision as a whole and considering the evidence relevant to his RFC conclusions, the ALJ's opinion does not specifically contemplate or conclude whether Plaintiff experienced nonconvulsive epilepsy more frequently than once weekly, which is an element of listing 11.03. The ALJ's discussion does not suggest whether he would find Plaintiff had seizures with the frequency required by the listing, even though that finding could be supported by substantial evidence in the record. Next, letters submitted to the ALJ on behalf of Plaintiff describe what friends and family observed regarding Plaintiff's seizures and associated phenomena, another aspect of listing 11.03. The ALJ's discussion does not address the specific descriptions of observations and phenomena in

the witnesses' letters but only focuses on the functional limitations that stem from Plaintiff's seizure activity. If the non-claimants' descriptions of Plaintiff's type and frequency of seizures were credited (even if their comments regarding the extent of Plaintiff's limitation were discounted), it appears the record could contain substantial evidence of Plaintiff's seizure pattern and associated phenomena for a favorable finding under listing 11.03. Finally, listing 11.03 also considers the duration of a claimant's prescribed antiepileptic treatment and the claimant's level of adherence to that therapy, but the ALJ's opinion does not develop how long or how faithfully Plaintiff received or complied with antiepileptic treatment. Again, the ALJ's decision does not state whether insufficient duration of, or nonadherence to, prescribed antiepileptic treatment is the reason he concluded Plaintiff did not meet or equal any listed impairment.[4] The ALJ's lack of explanation in this case does not allow the Court to conclude that substantial evidence supports the ALJ's step three conclusion under listing 11.03.

Because the ALJ did not give reasons for his step three finding, and because the record does not foreclose the possibility that Plaintiff could be found disabled under the criteria of listing 11.03

---

[4]Although the ALJ does not mention serum drug levels in his decision, in her brief the Commissioner argues Plaintiff cannot meet listing 11.03 because she failed to provide evidence of her serum drug blood levels to document her compliance with anticonvulsant treatment in accord with listings 11.00A and 11.03 (Defendant's Br., Court File No. 20, at 10). Contrary to the Commissioner's argument, "the procedure for adjudicating social security claims requires the ALJ to order additional tests if necessary to render an informed disability determination." *Steele v. Comm'r of Soc. Sec.*, 290 F.3d 936, 941 (7th Cir. 2002) (noting ALJ must have current evidence showing a therapeutic level of medication in claimant's blood before granting benefits under listing 11.03, and remanding because ALJ did not consider blood drug levels when concluding applicant did not meet the listing due to his noncompliance with treatment); *see* SSR 87-6 (stating policy for evaluating severity of epilepsy includes obtaining satisfactory information on blood drug levels through a purchased examination if not available in the treating physician's records). The ALJ's decision does not indicate what, if any, portion of his finding that Plaintiff did not meet any listing was based upon an alleged noncompliance with prescribed drug treatment.

during the relevant time period, it would be improper for this reviewing Court to make its own determination of whether Plaintiff is disabled and entitled to the relief she seeks. In light of the record evidence and the ALJ's failure to provide reasons for the conclusion he reached at step three of this disability determination, it is appropriate to remand this case to the Commissioner under sentence four of 42 U.S.C. § 405(g). Plaintiff raised additional issues in this appeal, but the Court need not review at this time the issues regarding the ALJ's credibility determinations and Plaintiff's request for a sentence six remand.

## Conclusion

Having carefully reviewed the administrative record and the briefs of the parties filed in support of their respective motions, for the reasons stated above it is **RECOMMENDED**[5]:

(1)     The Plaintiff's motion for reversal or remand (Court File No. 13) be

    **GRANTED**;

(2)     The Defendant's motion for a summary judgment (Court File No. 19) be

    **DENIED**; and

---

[5] Any objections to this Report and Recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7, 106 S. Ct. 466, 472 n.7, 88 L. Ed. 2d 435 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).

(3)     A judgment be entered pursuant to Rule 58 of the Federal Rules of Civil

Procedure **REVERSING** and **REMANDING** the Commissioner's decision

which denied benefits to the Plaintiff, pursuant to Sentence Four of 42 U.S.C.

§ 405(g).


s/*Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

22